Eno, J.
By this action of contract in two counts the plaintiff seeks to recover from the defendant, his tenant, an additional rent of $7.50 per month from July 16, 1948 to the end of May 1949, amounting in all to $56.25.
On April 7, 1942 the plaintiff, in accordance with the requirements of the Federal Emergency Price Control Act of 1942, (50 U. S. C. Appdx. § 901) registered the apartment occupied by the defendant with a maximum rent of $40.00 per month, which the defendant has continued to pay until March 1949.
On July 16, 1948, the plaintiff filed a petition with the Area Rent director of the Office of the Housing Expediter, for an increase in rent for the defendant’s apartment, due to the increase of operating costs and taxes. The rent director, after consideration of the evidence, determined that the maximum rent for said apartment should be adjusted to $47.50 per month, or an increase of $7.50 per month, and made this order retroactive to July 16,1948.
This order contains the following pertinent endorsement:
*35 “Notice to Landlord and Tenant: The effect of this order is merely to increase the rental ceiling as of its effective date. The right to collect the higher rental depends upon your rental agreement under local law.”
The plaintiff, after he obtained this order on February 11, 1949, demanded payment of the defendant of $7.50 per month from July 16, 1948, but the defendant refused to do so. However, he began to pay the increased rent of $47.50 in March 1949.
The plaintiff filed, and the Court denied, the following requests for rulings:
“ (1) Upon all the evidence there should be a finding for the plaintiff on his declaration. (6) As a matter of law the Rent Director had the power to make his order, a copy of which is made a part of the declaration, retroactive to July 16, 1948, and the plaintiff is entitled to recover the increase of $7.50 per month from July 16, 1948, to and including February, 1949. (7) As a matter of law the said Housing and Rent Act of 1947, as amended, being effective during the period covered by the order of the Rent Director the provisions of said Act became one of the terms of the tenancy between the plaintiff and defendant, subject to adjustment in the rent, and by invoking § 204(b)(1) of the Act, the plaintiff, as landlord, is enforcing a contractual liability of the defendant as tenant. Viera . v. Memino, 322 Mass. 165, 170, and cases cited.”
The Court made the following findings of facts:
“That the defendant has been a tenant of the plaintiff for about 12 years, paying a monthly rental of $40.00; that the plaintiff filed with the local Rental Area Director a petition for an increase in the rent for the apartment occupied by defendant of substantial hardship; that on Feb. 7, 1949, the Rent Director entered an order, retroactive to July 16, 1948, based on said substantial hardship, changing the maximum monthly rental of said apartment occupied *36 by defendant from $40. a month to $47.50 a month; that the plaintiff demanded this increase in rental, which the defendant refused to pay beginning with said retroactive date.” The Court further found “that to compel the defendant to pay this increase would be a violation of the terms of his contract of rental with the plaintiff, and that the increase allowed by the Director cannot be collected by the plaintiff unless he complies with the local law; and that the order of the Rent Director merely changes the rental ceiling and does not fix the actual rental, as a landlord can charge less than the ceiling if he so desires,” and found for the defendant.
We think that there was no prejudicial error in the denial of the plaintiff’s requests for rulings. While the order of the Rent Director increased the maximum rent from $40.00 to $47.50 per month retroactive to the date of filing the petition, the right to collect the increased rent still depended on local law. We think this case is governed by Williams v. Seder, 306 Mass. 136-137, which held that
“A tenancy at will arises out of an agreement, express or implied, by which one uses and occupies the premises of another for a consideration — usually the payment of rent. The relation between the tenant and the landlord is contractual. Central Mills Co. v. Hart, 124 Mass. 123; Porter v. Hubbard, 134 Mass. 233; Lindsey v. Leighton, 150 Mass. 285; Crowe v. Bixby, 237 Mass. 249. Such a tenancy could be terminated by a written notice in accordance with G. L. (Ter. Ed.) c. 186, § 12, by operation of law as by a sale or lease of the premises, or by an agreement between the parties. King v. Lawson, 98 Mass. 309; Torrey v. Adams, 254 Mass. 22; Mescall v. Somerset Savings Bank, 305 Mass. 575. The notices purporting to increase the rent were not notices to quit, and the plaintiff never expressed any intent to have the tenant vacate her premises. The defendant wa.s already occupying the premises as a tenant at will, and the terms of the existing tenancy could not be changed and a new tenancy at will be sub *37 stituted for the former tenancy unless with the mutual assent of the parties. Hastings v. Lovejoy, 140 Mass. 261; Conroy v. Toomay, 255 Mass. 87; McCormick v. Proprietors of the Cemetery of Mount Auburn, 285 Mass. 548.
There was no evidence that the tenant ever agreed to pay the increased rent mentioned in the notices. He did not remain silent but immediately upon the receipt of each of the two notices, and ever since, steadfastly refused to pay the demanded increase. He gave the plaintiff no reason to believe that he had promised to pay the increased rental. Hobbs v. Massasoit Whip Co., 158 Mass. 194; Timmins v. F. N. Joslin Co., 303 Mass. 540. The occupancy of the premises subsequent to the receipt of the notices was not shown by the plaintiff to be other than under a continuance of the tenancy existing prior to the giving of the notices. The auditor found that the defendant did not agree to an increase in the rent in continuing to occupy the premises and we are unable to find anything in the report or in the oral testimony at the trial that in any way shakes this finding. Wakefield v. American Surety Co., 209 Mass. 173; Cook v. Farm Service Stores, Inc., 301 Mass. 564.”
There being no prejudicial error the report is to be dismissed.
*38 STATEMENT
Statement of the ownership, management, circulation, etc., required by the Act of Congress, of August 24, 1912, as amended by the Acts of March 3, 1933 and July 2, 1946, of Massachusetts Appellate Division Reports published bimonthly at Boston, Mass., for October 1, 1950.
State of Massachusetts, County of Suffolk — ss.
Before me, a Notary Public in and for the State and county aforesaid, personally appeared A. Moskow, who, having been duly sworn according to law, deposes and says that he is the editor of the Massachusetts Appiellate Division Reports and that the following is, to the best of his knowledge and belief, a true statement of the ownership, management, etc., of the aforesaid publication for the date shown in the above caption, required by the Act of August 24, 1912, as amended by the Acts of March 3, 1933, and July 2, 1946 (election 537, Postal Daws and Regulations), printed on the reverse of this form, to wit:
1. That the names and addresses of the publisher, editor, managing editor,
and business manager are: Publisher, Lawyers’ Brief & Publishing Co.;
Editors- -A. Moskow — H. G. Slater; Managing Editor, A. Moskow; Business Manager, D. Kerr, all of Boston, Mass.
2. That the owner is: (If owned by a corporation, its name and address must be stated .and also immediately thereunder the names and addresses of stockholders owning or holding one percent or more of total amount of stock. If not owned by a corporation, the names and addresses of the individual owners must be given. If owned by a firm, company, or other unincorporated 'concern, its name and address, as well as those of each individual member, must be given.) Lawyers’ Brief & Publishing Co.; W. Kerkin, T. Lyons, A. Moskow and W. G. Embree, all of Boston, Mass.
3. That the known bondholders, mortgagees, and other security holders
owning or holding 1 percent or more of total amount of bonds, mortgages, or other securities are: (If there are none, so state.) None.
4. That the two paragraphs next above, giving the names of the owners, stockholders and security holders, if any, contain not only the list of stockholders and security holders as they appear upon the books of the company but also, in cases where the stockholder or security holder appears upon the books of the company as trustee or in any other fiduciary relation, the name of the person or corporation for whom such trustee is acting, is given; also that the said two paragraphs contain statements embracing affiant’s full knowledge and belief, as to the circumstances and conditions under which stockholders and security holders Who do not appear upon the books of the company as trustees, hold stock and securities in a capacity other than that of a bona fide owner; and this affiant has, no reason to believe that any other person, association, or corporations has any interest direct or indirect in ■ the said stock, bonds, or other securities than as so stated by him.
A. MOSKOW,
Editor.
Sworn to and subscribed before me this 1st day of March, 1949.
(Seal)
My Commission expires Aug. 26, 1955.
J. I. MOSKOW,
Notary Public